Hitchcock, C. J.,
dissenting. Dissenting as I do, from the majority of the court in the decision of this case, it is prope7 for me to state the reasons why I thus dissent. The case itself is of but little consequence, so far as the amount in contro versy is concerned, but it seems to me that an important prin ciple is involved, and that the principle of the decision, if adhered to, will in many cases operate to work out manifest in justice. But for this, I would have been satisfied with a mere silent dissent.
So far as I have had any experience in the court, no case like the present has ever been presented for consideration. Many cases under the law “ providing for the collection of claims against steamboats,” etc. (Swan’s Statutes 209), have been presented, but in no one of them, according to my recollection, has the question, upon the determination of which this case should be mad'e to turn, been agitated.
In order to a correct understanding of the case, it is necessary to be particular as to the facts as disclosed in the bill of exceptions.
From the bill of exceptions it appears that on the 15th day of October, 1846, an agreement was made and entered into between Lewis & Beardsley, of Oswego, in the State of New York, and Joseph Arnold, of Toledo, in the State of Ohio, by which Arnold agreed to build for Lewis & Beardsley a vessel hull, at said Toledo. This contract is made a part of, and is attached to, the bill of exceptions. The work was to be completed by the 4th day of April, 1847, and the price to be paid, twenty-four dollars per ton, custom-house measurement.
A vessel was built pursuant to this contract, was square rigged, called the Andes, and is the defendant in this suit. The contract price for the building was paid by Lewis & Beards *207 ley, and whatever else they may be compelled to pay, is in addition to that which they agreed to pay, when the contract was made.
Now the question properly arises, under this contract, as to the ownership of this vessel while she was building. I am aware that there is some difficulty, and perhaps doubt upon this subject. The general rule undoubtedly is, that where a ship-builder undertakes by contract to build a ship for another, ¿he craft remains the property of the builder, until after delivery. But this rule is subject to exceptions. Where the person for whom the ship or vessel is building, can, by the contract, compel the delivery of the very ship or vessel in the course of construction, where the builder w'ould not fulfill his contract by the delivery of another craft of similar dimensions and of similar build, I suppose it may with propriety be held, that the ownership of the person for whom the craft was built attaches as the work progresses.
In the case before the court, the agreement between the par ties to this contract is, that so fast as the work progresses, the parts of the vessel, the materials, everything, is to be consid ered as in possession of Lewis & Beardsley. The materials are to be furnished as paid for by them during the progress of the work. They have the right secured to them of directing in some particulars, at least, in what manner the work shall be done. They are the owners, employing Arnold to do the work. It is to be done for. them. A part of the payments are to be made as the work is going on; and the balance within a limited period after it is finished. It seems to me that this contract is within the rule established in the case of Woods v. Russel, (5 B. & A. 944,) and that Lewis & Beardsley may be considered as the owners while the work was in progress.
But in the view which I take of the case, I am not aware that it is very material whether Lewis & Beardsley are considered as the owners of this vessel, at the time the cause of action is claimed to have occurred, or whether at that time Arnold, the builder, was the owner.
*208 The bill of exceptions further shows, that Arnold, while in possession of the vessel and building -the same, entered into a contract with one James W. De Neal, by which De Neal agreed to plank the deck of said vessel. In the month of January, 1846, the plaintiff performed sixteen days labor in planking the vessel, and this work was done by the plaintiff while in the employ of said De Neal.
Erom this state of facts it is apparent that if Lewis & Beardsley were the owners of this vessel, while she was building, Arnold was contracted to do the entire work; De Neal was a sub-contractor under him, to plank the deck, and the plaintiff a laborer under De Neal, and in his employ. If Arnold is to be considered the owner of the vessel, then De Neal was a contractor with him to plank the deck, and the plaintiff a hand in the employ of De Neal, to do a part of this work. There can be no reasonable pretense that there was any contract, or priority of contract between the plaintiff and Lewis & Beardsley, or between the plaintiff and Arnold.
The facts already stated show that Webster, the plaintiff in this case, performed labor upon the deck of the brig Andes. But for whom did he perform that labor, in whose employ was it done, and who was indebted to him for it ? The case shows that the work was done by him as the hireling of De Neal, and in the employ of De Neal. His interest was with De Neal, and in consequence of the labor by him performed, he became the creditor of De Neal. If the debt was not paid he would have had a right of action against De Neal. I employ a man to build for me a house, for which I agree to pay him a specified price; and in performing his contract, he employs others to labor for him,- can those laborers look to me for their pay ? I apprehend not. They must enforce payment from him with whom they have contracted, and for whom the wo2\k is done. Now I do not apprehend that any one will say, that by any principle of common law, this plaintiff would have maintained an action, either against Lewis & Beardsley, or Arnold, whichever of them may be held to be the owner of *209 this vessel. De Neal, and De Neal alone, was the debtor of the plaintiff so far as any matter of contract is concerned, and he alone would, at common law, be liable to an action.
We have a statute which provides that no one shall be answerable, upon a promise to pay the debt of another, unless that promise is in writing; but by the decision of the court in this1 case, Lewis & Beardsley are compelled to pay the debt of DeNeal, although they have made no promise to do it, either in writing or otherwise.
This suit is brought against the brig Andes by name, under the act of the 26th February, 1840, entitled “ an act providing for the collection of claims against steamboats,” etc., before-referred to. As, according to my apprehension, a case is presented in which it is attempted to extend the provisions of that-statute beyond what has been heretofore done, it seems necessary to examine it with some particularity.
The first section of this act provides, (Swan’s St. 209,) “that steamboats and other watercrafts, navigating the waters within, or bordering upon this state, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee or other agent, for materials, supplies or labor, in the building,, repairing, furnishing or equipping the same, or due for wharf-age ;. and also for damages arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft; or for any damage or injury-done, by the captain, mate, or other officer thereof, or by1 any' person under the order or sanction of either of them, to any person who may be a passenger or band on such steamboat or1 other watercraft, at the time of the infliction of the injury.”
This section declares that the steamboat or other watercraft “ shall be liable for debts,” etc.; but it only makes the craft liable for such debts as the owner himself would be liable for. So far as any matter of contract is concerned, no new liability is created. It may be otherwise with respect to torts. But in this case we have to do with contracts alone. And so far as- *210 these are concerned, the law declares that the craft “ shall be liable for debts contracted by the master, owner, steward, consignee, or other agent, for materials, supplies or labor, in the building, repairing, furnishing, or equipping the same.” At ■common law, the owner of the craft would be liable for all debts thus contracted, for the purposes aforesaid. The master, the steward, the consignee, are his agents, and so long as they act within their respective agencies, he must be bound.
And the owner of a vessel may, and generally has other agents, as well as those named, by whose contracts he would be bound. It is, as it seems to me, clear, that it was not the intention, by this act, to create any new liability. I infer this from the act itself; and I suppose this act, like every other statute, is to be construed by the language used.
In addition to this, it may well be said that any other construction would lead to manifest injustice. For it is certainly unjust that the property of any man should be sacrificed for the payment of debts for which he was not himself liable. That such injustice will sometimes be done, under this law, cannot be denied; but it should be avoided as much as possible. It can never take place except Avhere the debt, attempted to be ■enforced, accrued previous to the transfer of the boat or craft.
It may be asked, if such be the fact, if no neAV liability is created, why was the laAv enacted ? This question is answered by this eoAirt in the case of Canal Boat Huron v. Simmons, 11 Ohio R. 460. The court there say, “ The mischief intended to be remedied was, the difficulty of collecting debts due from the owners of boats, for articles furnished for their use,” etc. Debts due from theowners ” of boats, not due from other persons, were in the contemplation of the general assembly; at least, so thought the court, in deciding the case referred to. And as the owner in many cases could not at all times be readily found, or might be at a distance, a proceeding against the craft, by name, was authorized. The effect of this legislation was to give a new remedy, not a new cause of action; at any rate, such is the case so far as contracts are concerned.
*211 That such was the intention may be further inferred from the second section of the act. This section provides “ that any person having such demand, may proceed against the owner or owners, or master of such craft, or against the craft itself.”
I have attempted already to show that the plaintiff in this case could not have an action against .the owners of this vessel, for the reason that they were not his debtors. De Neal was his debtor, not Lewis & Beardsley, nor Arnold.
. There is some difficulty in giving a sensible construction to this last section, so as to make it comport with our ideas of justice. I think we will be compelled to depart a little from the letter, in order to arrive at the true intent of the legislature. It can hardly be supposed that it was intended to give an action against the master of a boat or vessel, for work performed during the building of the same, and before he had any connection with it; nor that the owner would be liable to an action for an assault and battery, committed by a petty officer of the craft upon one of the hands. Such may be the meaning of the law; but if it is, it establishes a hard rule; and no statute, establishing such a rule, should be extended, by construction, beyond its literal meaning. Probably the meaning is, where the owner is liable, you may proceed against him or the craft, at election ; and so in cases where the master is liable, as well as the owner, the suit may be against him or against the craft. This, however, is foreign to the question now before the court, except so far as it may lead to the adoption of some rule of construction applicable to this act.
The act itself, is in derogation of the common law, well enough, perhaps, when it is applied to cases within its obvious meaning, deleterious in its consequences, when, by construction, it is extended to cases not within that meaning.
So far as this case is concerned, the claim of the plaintiff is for labor performed in the building of the vessel. Of course it is only necessary to inquire how far the vessel itself is liable to the laborer. The provision of the statute is, that the craft “ shall be liable for debts contracted on account thereof, by the *212 master, owner, steward, consignee, or other agent, for materials,, supplies or labor,” etc. She is liable, then, for debts contracted by five descriptions of persons. In order to render hei liable, the debt must be contracted either, first, by the “ master,” or, second, by the “ owner,” or, third, by the “ steward,” or, fourth, by. the “ consignee,” or, fifth, by some “ other agent.” This is the provision of the statute, and if the debt is contracted by any other person, the craft is not liable. Here is no common law right. At common law, a debt arising out of a contract, either for labor or materials, could only be enforced against the person. But, as before stated, the owner would be liable for labor performed upon, or materials furnished on account of his vessel, where the labor or materials had been furnished pursuant to a contract made with himself, or the master, steward, consignee, or other agent, by him constituted. Such persons are all his agents ; and, as their principal, he would be bound by contracts by them made, within the limits of their respective agencies.
The legislature having thus prescribed with whom the contract must be made, in order that the debt, accruing under that contract, may be enforced against the vessel or other water craft, it is proper for us to inquire whether the debt sought to be enforced in this case, is within that provision. With whom did Webster contract to do the work which he performed, and which work is the consideration of the debt which he now seeks to enforce ? To whom did he give the credit ? The bill of exceptions answers the question. It is therein stated “that said labor was done in the employment of James W. De Neal, in pursuance' of a contract which he had then and there entered into, to plank the deck of the defendant aforesaid, with Joseph P. Arnold,” etc. According to this statement, the work was done for De Neal. The credit was given to him. Will it be said that it was done “ on account of,” or on the credit of tl:e vessel ? There is nothing in the case upon which to predicate any such assertion. Nothing from which any such inference can be drawn.
*213 Now who is James W. De Neal, with whom and in whose employment Webster, the plaintiff, performed the labor? Is he the “ owner ” of the vessel ? It will not be pretended. Is he the “ master ?” No; for, at the time, there was no such officer or agent. Was he the “ steward ?” Most surely not. Was he the “ consignee ?” There is no evidence of it. Was he any “ other agent,” constituted by the owner, or by any one having authority under the owner ? I think it will not be said that he is. He certainly, then, is not in that situation that an individual must be in, in order that a debt contracted with him can be enforced, under this statute, against any description of watercraft.
But the case shows who and what he is. He is merely a sub-contractor under Arnold, to do a portion, of the work upon this vessel. The work which was done by the plaintiff, was •done for him, and upon his credit. And now, by the judgment ■of this court, this debt, due from De Neal, is to be paid by the owner of the vessel, upon which the work was done; although that owner has, as the case shows, paid for the vessel to the uttermost farthing, the contract price for which he procured her to be built. This may be in accordance with the strict rules of justice, but my perceptions are so obtuse that I cannot perceive it. True, “ the laborer is worthy of his hire,” but I know of no rule of morals or in law, which will require of him. who has not employed the laborer, to pay that hire.
It has, however, been sometimes said, that a sub-contractor under him who has the original contract to build a vessel or other watercraft, may, by construction, be held to be that “ other agent ” spoken of in the statute.
Can this position be sustained ? It seems to me not. The agent here spoken of is an agent of the owner of the vessel. The phraseology is, “ master, owner, steward, consignee or other agent.” The master, steward and consignee are all agents, to a cqrtain extent, of the owner, constituted by him or under his direction, and empowered by him to act, and certainly this “ other agent” must be of the same character. A “ ship’s hus *214 band ” is an agent of the owner of the ship, and in almost-every port frequently visited by a ship, will be found some agent to attend to her concerns in that port. In our western ports we find many of this description of agents, and in common parlance, they are called the agents of the particular crafts to whose concerns they attend. Neither a steamboat nor any other watercraft, however, can appoint an agent. Although our steamboat law, as it is called, authorizes any watercraft to be acted upon, it does not give that craft vitality to act. All these agents are creatures of the owner of the craft, deriving their authority mediately or immediately from him. He is the principal, they the agents. , To settle the question whether He Neal, the sub-contractor under Arnold, provided Arnold is to be considered as the builder merely of this boat, is the agent of Lewis & Beardsley, so as to bind them by his contract, it is only necessary to put a hypothetical case. A, being desirous to build a house, employs B, a master builder, to do the work for him, and to furnish the material, for which A is to pay to him a specified price. Does B thereby become the agent of A ? and can he bind A to pay to a person who shall furnish materials to B to put into the house ? Or can he bind A to pay the laborers, which he himself shall employ to assist him in laboring upon the building ? If under such circumstances B could be held to be the agent of A, and could bind A to pay for materials which he himself should purchase, and to pay the laborers which he himself should employ, then indeed can De Neal be considered as the agent of Lewis & Beardsley or of Arnold, whichever of them was owner of this vessel, while building; otherwise he cannot be so considered.
The case of Treat v. Canal Boat Etna, has been cited as an authority in favor of the plaintiff in this case. That case was first before this court in 1846, and reported in 15 Ohio R. 585. It was again before the court in 1847, and it is reported in 16 Ohio R. 276. It may be remembered that at neither term when this case was before the court, was the decision made by a majority of the. court. It was decided by two judges, *215 against the opinion of a third, one member of the court taking no part in the deliberations or decision. But if I can understand the language used by the judges who decided that case, they entertained precisely the same opinion which I now entertain and have expressed.
The case was this: Treat, under a contract with Standart, Griffith & Co., had built for them two canal boats, at a certain stipulated price. Of these boats the Etna was one. The Etna was delivered 24th April, 1841, and the other, called the Hope, on the 4th of May, in the same year. Payment was to be made not in hand, but as the boat earned the money. Standart, Griffith & Co. continued to make payments from time to time until March, 1843, when they failed, and on the 8th of June of the same year Treat commenced proceedings against the boat Etna, for the balance still due. The question, and the only question, decided by the court at each term the case was before-them was, whether Treat, or Standart, Griffith & Co. were the-owners of the boat, before the actual delivery by Treat to said Standart, Griffith & Co. The court held that until the delivery the property of the boat was in Treat, and that such being the fact, he did not bring himself within the law authorizing proceedings against watercraft by name. This question of ownership was the great question raised, and that being determined the whole case was disposed of. If this proceeding had been, by Arnold, builder of the brig Andes, against the Andes by name, to recover the contract price of the vessel, it would have been like the case of Treat against the canal boat Etna. But this is not a proceeding by Arnold the builder, but Webster, laboring on the brig, in the employ of De Neal, a sub-contractor under Arnold.
But although the cases are unlike, it may be useful to refer to portions of the language of the court, as showing the opinions at that time entertained with respect to the law. When the case was first decided, the court, after stating that the claim was for materials, supplies and labor, say, “ The statute makes the boat liable for such debts, when contracted by the owner, *216 on account of the boat.” And again, .“ The statute pre-supposes that the person having a demand, for work, labor and material against a boat, has a right of action at the same time, and co-extensive therewith, against some third party as owner of the boat.”
The judge who delivered the opinion of the court, when the case was again presented, announces expressly that a majority of the court are still of the opinion “ that Treat was the owner of the boat while it continued in his possession.” And he seems, in some measure at least, to have been brought to this conclusion, from the consideration that a purchaser of a boat, after she was bult, would not be liable “ for the debts contracted on account of the boat, to persons who furnished the timber and materials for the boat, or to the persons who were hired by the boat builder, to aid in building it1.” Treat was the boat builder, who purchased the timber and materials, and hired the laborers. If he was held to be the owner, then the material men and laborers were safe, because they had contracted with the owner. “ But,” says the judge, “ we think a suit for materials or labor, would lie against the builder, and that it could be clearly maintained, under • this statute, against the boat, in whatever hands she might be found. Upon this last point, •neither the language nor meaning can admit of any doubt.”
Now this is all sound law as applicable to the case then un•der consideration, and I do not suppose that it was intended to be applied to any other case or state of case. The court had ■already decided that Treat, the builder of the boat, was the owner until she was sold and delivered to Standart, Griffith & •Co.. It followed then, as a matter of course, that the material men or the laborers who had contracted with this builder, and owner, might have an action against that builder, and no private sale or transfer of the boat, could deprive them of their remedy given by the statute. But all this is far from saying that a man who has furnished materials or performed labor, upon a contract with one who is neither “ master, owner, steward, consignee or other agent,” can have redress under this statute. *217 The principle which now seems to be adopted is, that he who labors upon a watercraft, may enforce payment under the statute, whether he has contracted with the owner or a stranger, or whether he has labored of his own free will and without any oontract or employment at all.
The case of Southwick v. Packet Boat Clyde, 16 Blackford 148, is a case in point in the ease now before us. The law of Indiana is not materially different, although somewhat variant, from our own. In that case, the court held “ that a person who builds a boat agreeably to his contract with the owner or master, etc., has a lien on the boat for the price; but that the workmen employed by him have no lien — and further, •that it makes no difference whether he has or has not paid those workmen.”
Such, it seems to me, is the obvious intent and meaning of our own statute. My brethren think otherwise, and I would have submitted in silence, but for the principle involved, and ■the consequences which may follow the decision. One of those consequences is, that an individual who undertakes to procure for himself .the building of a steamboat or other watercraft, may be compelled to pay for the same three times or more, before he can hold it unincumbered. Especially will this be the case, if he attempts to procure the building of the same by contract. He must first pay according to his contract to the original contractor. He may next be compelled to pay the claims of all the sub-contractors. And after all this, under the present decision, he is made liable to the respective laborers, laboring in the employ of the sub-contractors. All this is effected, as it seems to me, not by giving to the statute its plain and obvious meaning, but by giving to it a forced construction.
It seems to be considered by a majority of the court, that the decision of this case is peculiarly favorable to the, laborer. But it seems to me that this is a mistake, and that no decision •could be more unfavorable to the laborer than is the one now made. It must be injurious to the whole ship building interest *218 in the state. Men will not contract for the building of any kind of v/atereraft within the state, vihen it comes to be understood that we have a law which gives to every sub-contract- or and their hirelings, a lien upon the vessel, and that the owner cannot enjoy the property for which he has paid, without paying for the same over and over again. Prudent men will not, by their own act, place themselves in this situation. Steamboats and other watercrafts will continue to be built, but they will not be built within our limits. And if Ohio laborers desire to engage in such kind of work, they must go to other states to seek employment. Such will be the natural, and as I believe, the inevitable consequence of this decision.
That this decision does not carry out the intention of the law-making power, is perfectly evident from subsequent legislation.
On the 11th of March, 1843, the general assembly passed “ an act to create a lien in favor of mechanics and others in certain cases.” In the first section it is provided, “ That any person who shall perform labor, or furnish materials, or machinery, for constructing, altering or repairing any boat, vessel or other watercraft, or for erecting or repairing any house, mill, manufactory or other building or appurtenance, ly virtue of a contract or agreement with the owner thereof, shall have a lien to secure the payment of the same, upon such boat, vessel or other watercraft, and upon such house, mill, manufactory or other building or appurtenance, and the lot of land upon which the same shall stand.” Ohio L. vol. 41, p. 66.
This section creates a lien, only in favor of a person who has performed labor or furnished materials “ ly virtue of a contract or agreement with the owner thereof..” That is, the owner of the building, boat, vessel or other watercraft, upon which the lien attaches. This is clear and explicit, and I suppose no one would attempt to extend it by construction. But it is no more clear, no more explicit, than is the first section of the act allowing proceedings against steamboats or other watercraft by name, where this latter act defines or declares for what debts *219 the boat or other watercraft may be seized. It is for “ debts contracted on account thereof, by the master, owner, steward, consignee, or other agent.” Why should one of these laws be held to apply only to labor performed under a “ contract with the owner,” and the other held to apply to debts contracted by other persons than those mentioned in the act itself ? I can see no reason for the distinction in the provision of the acts themselves, nor in the nature of the case.
This lien law furnishes additional security to one who performs labor upon a boat or vessel, under contract with the owner, over, above and beyond that which he possessed under the act “ authorizing proceedings against steamboats or other watercraft by name.” Under this latter act he had no lien, strictly so called, until the craft was seized by virtue of process. But under the lien law, if he files his account as provided in the seventh section of the act, his lien attaches for the period of two years from the commencement of the work.
The second section of this lien law provides for another class of cases. It is as follows: “ every mechanic, or other person, doing or performing any work toward the erection or repair of any house, mill, manufactory, or other building, or appurtenance, or the construction, alteration, or repair of any boat, vessel, or other watercraft, erected under a contract between the owner thereof and builder, or other person, whether such work shall be performed as journeyman, laborer, carman, subcontractor or otherwise, or any person who shall furnish materials for the construction of such building or vessel, whose demands,' for work so done, or materials furnished, has not been paid and satisfied, may deliver to the owner of such building or vessel an attested account of the amount and value of the work and labor thus performed, or the materials thus furnished, and remaining unpaid; and thereupon such owner shall retain, out of his subsequent payments to the contractor, the amount of such work and labor, for the benefit of the person so performing the same.”
The next succeeding four sections are upon the same sub *220 ject and point out the manner in which the amount due to the laborer is to be ascertained; and authorize the owner to pay this amount, and to claim a credit for the payment upon his contract with the builder ; but in' no event is the owner bound to pay one cent beyond what he is indebted to the builder, unless that indebtedness has been reduced by payment made subsequent to the presentment of the account, or unless it has been reduced by payments made in advance collusively. The claim of the plaintiff in this case is within both the letter and spirit of this provision, and had his account been presented to the owner in due time, he might have secured his pay.
It will be seen, that the persons whose claims are provided for in these sections have no lien, nor can they in any event have a lien upon the “ building, boat, vessel or other watercraft,” upon which the labor is performed. It is a different class of claims which attach as liens. And it will be further seen, that under these sections, no injustice can be done. The owner is not compelled to pay anything beyond the contract price of the building, whether that building be a house, boat, vessel or other watercraft. But this contract price he may pay to those who have performed the labor, and for such payments must have credit upon the contract. It is a just, equitable and fair law, in which respect is had to the rights of all concerned.
Now if the general assembly supposed the class of creditors provided for in these sections of the lien law, had the power of proceeding under the law authorizing proceedings against watercraft by name, why were these sections of the lien law passed ? Certainly it could not have been done for the security of the class of creditors therein named. They were already provided with a remedy far more effective than the one herein provided ; a remedy it is true novel, and in its operation many times unjust, but still it was a sure remedy. The fact that this law of 1843, was enacted, is conclusive, to my mind, that the body enacting it, supposed that there was, previous thereto, no law protecting the rights of the class of creditors named in the sections referred to.
*221 Upon full consideration, I am of opinion that the court of common pleas decided in accordance with the law, and that the judgment should be affirmed.